UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No: 6:26-cr-152-JSS-NWH-1

ETHAN DOMINIC JELLEYMAN,

Defendant.
___________________________________/

**ORDER**

Invoking the Fourth Amendment's protections against unreasonable searches and seizures, Defendant, Ethan Dominic Jelleyman, moves to suppress all evidence obtained from a warrantless search of his cell phone following its seizure at Orlando International Airport (OIA) on April 30, 2026. (Dkt. 28.) The Government opposes the motion to suppress, arguing that the border search exception to the usual search warrant requirement applies. (Dkt. 31.) The court held an evidentiary hearing on the motion on October 5, 2026. (*See* Dkts. 30, 32, 33.) Upon consideration, for the reasons outlined below, the court denies the motion.

**BACKGROUND**

During the hearing, the Government called two witnesses, each an official with the United States Department of Homeland Security (DHS). United States Customs and Border Protection (CBP) Officer Joshua Corso was the first witness, and Homeland Security Investigations (HSI) Agent Andrew Mroczkowski was the second.

Defendant did not call any witnesses but cross-examined Officer Corso and Agent Mroczkowski. The court generally credits the testimony provided by the witnesses. The court also heard argument from the parties during the hearing.

Officer Corso testified to the following. Since 2009, he has been a CBP officer, with duties focusing on conducting inspections at points of entry into the United States for purposes of national security and public safety. He has had duties relating to human trafficking since a February 2024 briefing, and those duties include coordinating with HSI, conducting research, and responding to active lookout alerts. Officer Corso defined lookout alerts as intelligence-based law enforcement alerts regarding specific individuals or shipped items that have been identified as derogatory. According to Officer Corso, a lookout alert may identify an individual as derogatory based on, for example, the individual's criminal past, ties to someone with a criminal past, or ties to an organization associated with drug dealing. Officer Corso's work with human trafficking has involved child sexual abuse material (CSAM), also called child pornography. In February 2024, supervisors from Miami, Florida, came to OIA and trained Officer Corso in CSAM investigations. Before then, CSAM was not a focus of Officer Corso's work, but CSAM sometimes came up in his work. The supervisors did not discuss the border search exception to the search warrant requirement with Officer Corso. Officer Corso's knowledge about the legality of searching electronic devices stems from annual trainings presented through CBP's Virtual Learning Center. CBP's policy requires articulable reasons for cell phone searches.

Officer Corso was stationed at OIA during the events at issue in this case, and during the hearing, he described the usual process of entering the country at that airport. According to Officer Corso, individuals arriving in the United States at OIA are directed through the customs hall, collect their baggage before or after their immigration screening, and pass through immigration if there is no reason to prohibit them from entering the country, although they may be subject to further screening. With respect to this case, Officer Corso received an active lookout alert for Defendant at OIA because Defendant was suspected of having CSAM, and Officer Corso responded to the lookout alert by meeting Defendant around where Defendant flew into OIA. Officer Corso recalled that the email providing the lookout alert for Defendant and for CSAM in his possession cited financial information as the basis for the lookout alert. Defendant had arrived on an international flight originating from Heathrow Airport in London, England. Given the international nature of the flight, Defendant was required to go through customs and immigration. Officer Corso reviewed Defendant's basic information such as his passport and asked him typical questions regarding his travel such as the purpose of his trip. Defendant had come to the United States for a family vacation, and ultimately, he was admitted into the country on the day that he arrived at OIA.

Officer Corso testified that he took Defendant's cell phone as part of customs processing. According to Officer Corso, electronic devices are not permitted in OIA's Federal Inspection Station. Defendant gave Officer Corso his cell phone, confirmed his ownership of the cell phone, and told Officer Corso that no one else used the cell

phone. Officer Corso provided Defendant with a tear sheet of information about the confiscation of the cell phone, and Defendant freely offered Officer Corso the passcode for the cell phone. After a baggage examination, Officer Corso put the cell phone into airplane mode to disable Wi-Fi, Bluetooth, and similar technologies of connectivity. Officer Corso spent approximately one hour and forty minutes examining the cell phone. He took the cell phone into his office away from cameras because of the CSAM suspected to be on the cell phone; he explained that doing so minimized other individuals' potential exposure to CSAM and protected child victims shown in CSAM. Officer Corso inspected Defendant's cell phone for hidden folders, applications, and documents where CSAM could be located. Officer Corso had received training on inspecting cell phones in 2017, when he worked at John F. Kennedy International Airport in New York City in connection with national security threats for which cell phones were examined for ties to terrorism. Officer Corso had also received guidance from HSI as to the inspection of cell phones.

Concerning suspected CSAM on Defendant's cell phone, Officer Corso found age-questionable, or age-difficult, material in a private or hidden folder. Officer Corso defined such material as depicting an individual who, by appearance and other indications, could well have been a minor but was not with absolute certainty a minor. This definition mirrors Agent Mroczkowski's definition of such material as prohibiting a conclusive determination as to whether the individual appearing in the material is an adult or a minor. Officer Corso testified to seeing one item of age-questionable CSAM on Defendant's cell phone and indicated that he possibly saw more than one

such item on the cell phone. Officer Corso also checked the messaging application Telegram, which in his experience was a means of exchanging CSAM, and he saw chats with links to possible CSAM, suggested by the phrase "pretty little teenies." He did not check the messaging application Potato Chat because he was not aware that the application was used to exchange CSAM. Once Officer Corso found potential CSAM on the cell phone, CBP's policy required him to contact HSI, as essentially, according to Officer Corso, CBP's job was to find CSAM whereas HSI's job was to investigate CSAM. Officer Corso followed CBP's policy by contacting HSI, and around 6:00 P.M. at OIA, Officer Corso handed Defendant's cell phone to Agent Mroczkowski. According to Officer Corso, CBP lacks the tools at OIA to perform full forensic analyses of electronic devices for CSAM, and if CBP's computers are used instead of HSI's computers, CSAM may get leaked out through the internet.

Agent Mroczkowski generally corroborated Officer Corso, testifying as follows. Agent Mroczkowski's duties for HSI include conducting investigations, writing reports, and collaborating with law enforcement organizations, and he is responsible for the collection, forensic examination, analysis, and preservation of electronic evidence. Analyzing an electronic device such as a cell phone can take several hours, and processing evidence obtained from the analysis can take additional hours or days. HSI computers are secured, for example requiring users to log on with credentials, and they have tools for extracting evidence from electronic devices. Agent Mroczkowski received guidance from HSI's legal division about searches, and this guidance included the border search exception to the search warrant requirement. As Agent

Mroczkowski understands the exception, neither a warrant nor probable cause is necessary for a search conducted at a United States border. According to Agent Mroczkowski, HIS's policy requires reasonable suspicion to seize electronics at the border.

Concerning the events at issue in this case, Agent Mroczkowski testified that an email from the National Targeting Center (NTC) contained a lookout alert for Defendant as a suspected purchaser of CSAM from a seller in the United Arab Emirates (UAE). On Thursday, April 30, 2026, Agent Mroczkowski went to OIA, acquired Defendant's cell phone from Officer Corso around 6:00 P.M., and transported the cell phone to a secured HSI forensic room. Located in an HSI building in Orlando, Florida, the forensic room is an evidentiary facility used by HSI personnel because it holds specialized equipment and technology including forensic hardware and software. Agent Mroczkowski stated that he did not analyze the cell phone at OIA because of the expected duration of the analysis. The same day that he acquired the cell phone, Agent Mroczkowski wrote down its identifying information such as its serial number, and the next day, he took and documented photographs of the cell phone. However, Agent Mroczkowski did not work on Defendant's cell phone again until Wednesday, May 6, 2026, when Agent Mroczkowski initiated an extraction of the cell phone. The extraction took approximately eight and a half hours. Agent Mroczkowski viewed the extracted material on Thursday, May 7, 2026.

When Agent Mroczkowski received Defendant's cell phone from Officer Corso, Agent Mroczkowski had already started work on two separate phone extractions for

an unrelated human trafficking investigation. Agent Mroczkowski described the investigation as an urgent matter with a pending date for an operation involving arrest and search warrants. The investigation entailed surveillance of a target location and cooperation with law enforcement outside HSI. On Friday, May 1, 2026, Agent Mroczkowski conducted surveillance for the investigation, and on Monday, May 4, 2026, he prepared for the warrant operation, which took place on Tuesday, May 5, 2026. According to Agent Mroczkowski, his search of Defendant's cell phone was a continuation of Officer Corso's border search, and the delay in searching the cell phone resulted from the preexisting unrelated human trafficking investigation.

Agent Mroczkowski testified that the forensic analysis told him where CSAM would be found in the Potato Chat application on Defendant's cell phone. Agent Mroczkowski performed a manual search including this application and ultimately discovered alleged CSAM images in the application. Agent Mroczkowski recalled looking at the Potato Chat application in software sometime between May 7 and 12, 2026, and seeing alleged CSAM images on Defendant's physical cell phone on May 12. As of the date of the hearing, investigators were reviewing the media files extracted from the cell phone, which numbered over 300,000. Agent Mroczkowski testified that after the forensic search of the cell phone had been conducted, Defendant or his family asked for the cell phone back. According to Agent Mroczkowski, the age-questionable material that Officer Corso uncovered on the cell phone remains age-questionable and thus is not the basis for the indictment in this case.

On May 20, 2026, Agent Mroczkowski submitted an affidavit in support of a

criminal complaint charging Defendant with transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1). (Dkt. 1.) The next day, Defendant was arrested pursuant to a warrant, had his initial appearance, and was detained pending criminal proceedings. (*See* Dkts. 3, 4, 11.) On June 17, 2026, the grand jury issued an indictment against him containing two counts and a forfeiture section based on the counts. (Dkt. 17.) Count one charges Defendant with violating 18 U.S.C. § 2252A(a)(1) and (b)(1) by, on or about April 30, 2026, "knowingly transport[ing,] using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, materials that contained images of child pornography." (Dkt. 17 at 1.) Count two charges Defendant with violating 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) by, on or about April 30, 2026, "knowingly possess[ing], and attempt[ing] to possess, materials that contained images of child pornography, that had been shipped and transported using any means and facility of interstate and foreign commerce and had been shipped and transported in and affecting interstate and foreign commerce by any means," which "images involved a prepubescent minor and a minor who had not attained [twelve] years of age." (Dkt. 17 at 1–2.) Defendant was arraigned on June 26, 2026, and pleaded not guilty to the charges. (Dkt. 20.) A jury trial in this case is set for the trial term commencing on February 1, 2027. (Dkt. 36.)

**APPLICABLE STANDARDS**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects[] against unreasonable searches and seizures."

U.S. Const. amend. IV. Although "reasonableness generally requires the obtaining of a judicial warrant" and thus probable cause, "a warrant is not required to establish the reasonableness of *all* government searches[,] and when a warrant is not required . . . , probable cause is not invariably required[,] either." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). For example, "[b]order searches, . . . from before the adoption of the Fourth Amendment, have been considered to be reasonable by the single fact that the person or item in question had entered into [the United States] from outside." *United States v. Ramsey*, 431 U.S. 606, 619 (1977) (quotation omitted). As such, "[b]order searches never require probable cause or a warrant." *United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018) (quotation omitted). Further, the Eleventh Circuit "require[s] reasonable suspicion at the border *only* for highly intrusive searches of a person's body." *United States v. Touset*, 890 F.3d 1227, 1234 (11th Cir. 2018) (emphasis added and quotation omitted). "A forensic search of an electronic device," even if intrusive, is a search of property, not of a person, and therefore "do[es] not require suspicion." *Id.* Although the Supreme Court has indicated in *Riley v. California*, 573 U.S. 373 (2014), that "[m]odern cell phones, as a category, implicate" significant privacy concerns, *id.* at 393, the Supreme Court has not done so in the context of border searches, *see id. passim*. Therefore, the Eleventh Circuit has rejected *Riley*-based arguments in that context. *See United States v. Pulido*, 133 F.4th 1256, 1274 (11th Cir. 2025) (explaining that *Vergara* and *Touset* rejected such arguments, and accordingly, doing the same), *cert. denied*, 146 S. Ct. 396 (2025).

"An otherwise lawful seizure can violate the Fourth Amendment if law enforcement acts with unreasonable delay . . . ." *United States v. Quarles*, No. 23-10377, 2025 WL 1430866, at *4, 2025 U.S. App. LEXIS 12086, at *10–11 (11th Cir. May 19, 2025). The Eleventh Circuit "has identified some relevant factors to consider in determining whether a post-seizure delay is unreasonable," and these factors include "(1) the significance of the interference in the person's possessory interest[,] (2) the duration of the delay[,] (3) whether the person consented to the seizure[,] (4) the [G]overnment's legitimate interest in holding the property as evidence[,] and (5) whether the police diligently pursued their investigation." *Id.* "[W]hen determining whether a delay renders a seizure unreasonable under the Fourth Amendment, [courts] evaluate the totality of the circumstances presented by each case." *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). Accordingly, "in some contexts, a delay as short as [ninety] minutes may be unreasonable[,] while in others, a delay of over three months may be reasonable." *Id.* at 614 (citations omitted).

The exclusionary rule is "a judicially[ ]created remedy . . . result[ing] in the suppression of evidence in the [G]overnment's case" when the evidence has arisen from a search or seizure in violation of the Fourth Amendment. *United States v. Ward*, 808 F. Supp. 803, 825 (S.D. Ga. 1992). "The rule's sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). "[B]ecause the exclusionary rule is 'prudential rather than constitutionally mandated,' it is 'applicable only where its deterrence benefits outweigh its substantial social costs.'" *United States v. Campbell*, 26 F.4th 860, 878 (11th Cir. 2022) (en banc) (quoting

*Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998)). As the "party moving to suppress evidence," Defendant generally "bears the burdens of proof and persuasion." *United States v. Wilson*, 979 F.3d 889, 908 n.9 (11th Cir. 2020) (citing *Touset*, 890 F.3d at 1231); *accord United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) ("The individual challenging the search bears the burdens of proof and persuasion." (quoting *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998))). That said, when Defendant "produces evidence that he was . . . subjected to a search without a warrant, the burden shifts to the [G]overnment to justify the warrantless . . . search." *United States v. De la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977); *see United States v. Longoria*, 183 F. Supp. 3d 1164, 1170 (N.D. Fla. 2016) (stating that "the Government bears the burden of establishing reasonable suspicion or probable cause for [a] seizure at a suppression hearing" (citing *De la Fuente*, 548 F.2d at 533)); *United States v. Peck*, 17 F. Supp. 3d 1345, 1354 (N.D. Ga. 2013) ("[T]he [c]ourt is bound to apply [*D*]*e la Fuente*.").

**ANALYSIS**

"Searches conducted at the border" must be "authorized by statute" and "reasonable under the Fourth Amendment." *United States v. Alfaro-Moncada*, 607 F.3d 720, 726 (11th Cir. 2010). Defendant addresses only the second requirement. (*See* Dkt. 28.) In any event, 19 U.S.C. § 1467 authorizes "the appropriate customs officer for [a] port or place of arrival" to "cause inspection, examination, and search to be made of . . . persons, baggage, and merchandise" arriving in the United States "from

a foreign port or place." *Id.*; *see United States v. Santiago*, 837 F.2d 1545, 1548 (11th Cir. 1988) ("Within the class of border searches which are authorized without suspicion, [section] 1467 authorizes the Customs Service to engage in secondary customs searches which may be conducted after an initial customs inspection."). For section 1467 purposes, a customs officer includes not only an officer of the Customs Service but also "any agent . . . authorized by law or designated by the Secretary of the Treasury to perform any duties of an officer of the Customs Service." 19 U.S.C. § 1401(i). The duties of the Customs Service not relating to revenue functions were transferred by statute to DHS, which includes CBP and HSI. *See* 6 U.S.C. §§ 203(1), 212(a)(1); *Alfaro-Moncada*, 607 F.3d at 726 ("The Homeland Security Act of 2002 transferred all customs functions, with the exception of certain revenue-related ones, to [DHS].").

Insofar as Officer Corso seized and searched Defendant's cell phone at OIA, binding Eleventh Circuit precedent makes clear that reasonable suspicion, probable cause, or a warrant was unnecessary to render the seizure or search constitutionally reasonable in light of the border search exception. *See Pulido*, 133 F.4th at 1274 ("[B]order searches never require a warrant—or even probable cause—to be reasonable. . . . And even more specifically, and more relevantly here, . . . the Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border." (quotation omitted)). To the extent that Agent Mroczkowski's further searching of the cell phone was part of the same border search rather than an extended border search, it also did not require reasonable suspicion, probable cause, or a

warrant. *See id.*; *see also United States v. Falzone*, No. 8:23-cr-351-VMC-SPF, 2024 WL 4164723, at *5, 2024 U.S. Dist. LEXIS 156587, at *15–16 (M.D. Fla. July 29, 2024) ("HSI's search of [the defendant's] phone at [HSI's] Tampa office was a valid border search that did not require reasonable suspicion. CBP [o]fficers and HSI [a]gents stopped [the defendant] immediately upon his []entry to the United States at Port Canaveral to search his property for child pornography, contraband the United States has a clear interest in keeping out of the country. Because the technology needed to conduct a forensic search of the cell phone was not available at Port Canaveral . . . , the Government transported the phone to HSI's Tampa office where it had software . . . for a forensic search. Although that search occurred two days later and 140 miles away, the phone never cleared customs. Given the lack of technology at Port Canaveral, the forensic search of [the defendant]'s phone occurred at the earliest practical point after the border was crossed. The miles between Port Canaveral and Tampa, and the two days between [the defendant]'s border crossing and HSI's forensic search of his cell phone, do not transform what was a valid border search into an extended border search." (citation omitted)), *report and recommendation adopted by* 2024 WL 3964089, at *2, 2024 U.S. Dist. LEXIS 154277, at *5 (M.D. Fla. Aug. 28, 2024).

To the extent that the further inspection of the cell phone at the HSI facility amounted to an extended border search requiring reasonable suspicion, reasonable suspicion existed for the extended search. *See Santiago*, 837 F.2d at 1548 (defining an "extended border search" as "a search that occurs beyond the functional equivalent of the border," and explaining that an "extended border search may not be conducted

unless the officials have a reasonable suspicion of criminal activity"). The reasonable suspicion standard requires officers to "have a particularized and objective basis for suspecting . . . criminal activity" based on "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417–18. That standard is satisfied here. The NTC issued a lookout alert regarding Defendant that connected him to a seller of CSAM from the UAE through financial details supporting his purchase of material from the seller, and the DHS officials operated based on this active alert. After Defendant provided his cell phone and passcode to Officer Corso, confirmed his ownership of the cell phone, and informed Officer Corso that he was the sole user of the cell phone, Officer Corso placed the cell phone into airplane mode, thereby isolating its contents from online sources. Officer Corso then found at least one item of age-questionable material in a private or hidden folder on the cell phone. In addition, he saw chats with links to possible CSAM, indicated by the phrase "pretty little teenies," on a messaging application allegedly known to be used to exchange CSAM.

In light of the above, reasonable suspicion supported further searching of the cell phone. *See United States v. Grimes*, No. 1:20-cr-427-SCJ, 2023 WL 2447595, at *3 n.3, 2023 U.S. Dist. LEXIS 40282, at *8 n.3 (N.D. Ga. Mar. 10, 2023) (finding reasonable suspicion for a border search of the defendant's electronic devices when officers testified that they relied on information from the NTC and had no "indication that the information was error-prone"), *aff'd*, No. 23-12455, 2025 WL 1233459, 2025 U.S. App. LEXIS 10231 (11th Cir. Apr. 29, 2025); *United States v. Roller*, No. CR-08-00361-RMW, 2009 WL 3762417, at *4, 2009 U.S. Dist. LEXIS 109633, at *12 (N.D.

Cal. Nov. 6, 2009) (rejecting the defendant's argument that a warrant affidavit failed to establish probable cause, and explaining that phrases such as "underage home" and "kidz index," which described online images, "alone suggest[ed] child pornography"), *aff'd*, 586 F. App'x 299 (9th Cir. 2014); *see also United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011) ("[C]riminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity[.]").

Considering the factors identified by the Eleventh Circuit, the court concludes that Agent Mroczkowski's delay in analyzing the cell phone did not transform the constitutionally reasonable border search or extended border search into an unreasonable search. *See Quarles*, 2025 WL 1430866, at *4, 2025 U.S. App. LEXIS 12086, at *10–11 (describing the factors as "(1) the significance of the interference in the person's possessory interest[,] (2) the duration of the delay[,] (3) whether the person consented to the seizure[,] (4) the [G]overnment's legitimate interest in holding the property as evidence[,] and (5) whether the police diligently pursued their investigation"); *see also Laist*, 702 F.3d at 613 (instructing courts to "evaluate the totality of the circumstances presented by each case"). As to the interference in Defendant's possessory interest in his cell phone, this interest "was diminished somewhat by the facts" that (1) he freely offered Officer Corso the passcode for the cell phone and (2) did not request the cell phone's return until after Agent Mroczkowski had conducted the forensic search that led to the discovery of the images forming the basis of the charges in this case. *See Quarles*, 2025 WL 1430866, at *5, 2025 U.S. App. LEXIS 12086, at *12 ("While [the defendant] had a possessory interest in his cell

phone, it was diminished somewhat by the facts that (1) he provided his password to the investigators at Port Canaveral, and (2) he does not claim to have ever requested his cell phone's return."). The court also notes: "[N]ot only is the expectation of privacy less at the border than in the interior, [but also] the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is . . . struck much more favorably to the Government at the border." *United States v. Montoya De Hernandez*, 473 U.S. 531, 539–40 (1985) (citations omitted). As to the duration of the delay, the cell phone was seized on April 30, 2026, and Agent Mroczkowski saw alleged CSAM images on the cell phone less than two weeks later. The Eleventh Circuit has found much longer delays to be reasonable. *See, e.g.*, *Laist*, 702 F.3d at 617 (a 25-day delay); *Quarles*, 2025 WL 1430866, at *6, 2025 U.S. App. LEXIS 12086, at *16 (a 47-day delay).

As to Defendant's consent to the seizure of his cell phone, although Defendant provided his cell phone and passcode to Officer Corso, the court does not conclude at this juncture that Defendant consented to the seizure. As Officer Corso presented the situation to Defendant, the cell phone was not permitted in OIA's Federal Inspection Station, and Officer Corso took the cell phone for customs processing. That said, Defendant came to the United States for a family vacation and voluntarily submitted himself to customs and immigration inspection upon reaching the border. "The Supreme Court has indicated that travelers at the border should expect intrusions and delay in order to satisfy the Government's sovereign interest in protecting [United States] borders from those who would wish to do [the country] harm." *United States v.*

*Kandhai*, No. 1:13-CR-00274-ODE-JFK-3, 2014 WL 1682070, at *7, 2014 U.S. Dist. LEXIS 58887, at *21 (N.D. Ga. Apr. 1, 2014) (alterations adopted and quotation omitted), *report and recommendation adopted by* 2014 WL 1682070, at *1, 2014 U.S. Dist. LEXIS 58366, at *2 (N.D. Ga. Apr. 28, 2014), *aff'd*, 629 F. App'x 850 (11th Cir. 2015). Moreover, consent is often not needed for a constitutionally permissible search. *See Laist*, 702 F.3d at 616 (examining a period of delay commencing when the defendant, who ultimately pleaded guilty to child pornography offenses, in fact revoked his consent to search his computer and hard drives); *see also United States v. Vallerius*, No. 17-CR-20648-SCOLA/TORRES, 2018 WL 2325729, at *6, 2018 U.S. Dist. LEXIS 85620, at *17 (S.D. Fla. May 1, 2018) ("[A]gents possessed independent authority to search the electronic devices for evidence of criminal activity or contraband as a result of the border search doctrine, and therefore consent is immaterial."), *report and recommendation adopted by* 2018 WL 2324059, at *1, 2018 U.S. Dist. LEXIS 85173, at *1–2 (S.D. Fla. May 21, 2018).

As to the Government's interest in holding the cell phone as evidence, file extraction for the cell phone had not finished as of the date of the suppression hearing because the cell phone contained more than 300,000 media files, some of which purportedly contain CSAM. The Government's interest is thus strong. *See Laist*, 702 F.3d at 616 (concluding that the presence of alleged CSAM images on the defendant's computer and hard drives "enhanc[ed] the [G]overnment's legitimate interest in maintaining custody of the computer and hard drives as substantial evidence of a serious federal crime"); *see also United States v. Mendez*, 103 F.4th 1303, 1309 (7th Cir.

2024) ("The [G]overnment's interest in detecting child pornography at the border is just as strong as its interest in intercepting firearms, narcotics, or any other prohibited item."). As to the diligence with which Agent Mroczkowski pursued his investigation into Defendant's purported criminal conduct, the court is satisfied that Agent Mroczkowski acted diligently. Immediately upon receiving the cell phone, Agent Mroczkowski began work on it by transporting it to the secured HSI forensic room, writing down its identifying information, and taking and documenting photographs of it. The preexisting unrelated human trafficking investigation represented "overriding circumstances . . . necessitating the diversion of law enforcement personnel to another case." *See United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (expressing sympathy for the argument that some delay would be reasonable in light of such circumstances). That investigation prevented Agent Mroczkowski from working on Defendant's cell phone for a few days, but once the warrant operation for that investigation concluded, Agent Mroczkowski returned to the cell phone, first submitting it for file extraction and then viewing the extracted material. *See Quarles*, 2025 WL 1430866, at *5, 2025 U.S. App. LEXIS 12086, at *14 ("Under these circumstances, including the transfer of the investigation from one agency to another, [the defendant] has not shown a lack of diligence."). The totality of the circumstances indicates that the brief delay did not render the search unreasonable. Consequently, the court does not suppress the evidence acquired as a result of the search.

## CONCLUSION

Accordingly, Defendant's motion to suppress (Dkt. 28) is **DENIED**.

**ORDERED** in Orlando, Florida, on October 15, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record